**In re Donna Marie WALLS, Debtor.**

**Donna Marie Walls, on Behalf of Herself and All Others Similarly Situated, Plaintiff,**

v.

**Wells Fargo Bank, N.A. Defendant.**

**Bankruptcy No. 97–18013–A. Adversary No. 00–1332.**

United States Bankruptcy Court, E.D. California.

May 7, 2001.

Donna Marei Walls, Coarsegold, CA, pro se.

Henry L. Wheeler, Clovis, CA, trustee.

## MEMORANDUM DECISION

WHITNEY RIMEL, Bankruptcy Judge.

On March 7, 2001, a hearing was held on the motion of defendant, Wells Fargo Bank, N.A. ("Defendant") to deny class certification. Following the hearing, the

court took the matter under submission. This court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(a). The United States District Court for the Eastern District of California has referred the remaining claims for relief in this adversary proceeding to this court.

*Procedural Posture.*

This adversary proceeding was filed in the Eastern District of California. Following a hearing on Defendant's motion to dismiss the complaint, the district court dismissed Counts I and III alleging violations of 11 U.S.C. § 524; and dismissed "to the extent these claims are premised on violations of sections 362 and 524 of the Code," Count V (alleging violation of RICO); and Count VI (alleging violation of the Fair Debt Collection Practices Act). The District Court additionally dismissed Counts VII, VIII, IX, and X as separate causes of action. The district court thereon referred the proceeding to the Fresno Division of the United States Bankruptcy Court for the Eastern District of California, where Plaintiff's bankruptcy case had been filed.

Plaintiff has filed an amended class action complaint setting forth claims for relief for wilful violation of the automatic stay provided by 11 U.S.C. § 362 and for contempt of court for violation of the discharge injunction set forth at 11 U.S.C. § 524(a). In her amended complaint, Plaintiff also asserts that her claims are properly brought as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7023.[1]

On January 17, 2001, Defendant filed this motion to deny class certification.

*Background Facts.*

The parties do not dispute the underlying facts. Plaintiff filed a Chapter 7 petition in the Fresno Division of the United States Bankruptcy Court for the Eastern District of California on September 24, 1997. In her bankruptcy schedules, she listed a prepetition obligation of $118,000 to Defendant. The obligation was secured by a first deed of trust on real property located at 30220 Yosemite Springs Court, Coarsegold, California. The monthly payments on the obligation were $910.39. The parties agree that when the bankruptcy case was filed, an automatic stay became effective and enjoined acts to collect debts. The parties agree that Ms. Walls received her discharge on January 2, 1998, and a permanent injunction was triggered enjoining collection activities on discharged debts. Further, there is no dispute that Wells Fargo Bank did not seek relief from the automatic stay in the bankruptcy case or from the discharge injunction.

According to Plaintiff, but denied by Defendant, Defendant "wilfully continued its debt collection activities" despite having knowledge of the bankruptcy case.[2]

According to the Amended Complaint,

"Defendant collected and continued collection activities during the Bankruptcy proceedings such as telephoning Plaintiff and sending monthly collection statements, payment default notices and/or account notices including, but not limited to, sending Plaintiff a new monthly payment book during the automatic stay period, and delinquency notices dated March 1, 1998, and April 6, 1998."[3]

The Amended Complaint further alleges that:

---

1. Hereinafter, references to Rules are to the Federal Rules of Civil Procedure, unless otherwise noted.

2. Amended Complaint at Paragraph 10.

3. Amended Complaint at ¶ 11.

"Pursuant to the unlawful collection efforts of Defendant in pursuit of the discharged Debt, Class Representative [Walls] made payments of $910.39 on October 4, 1997, $910.39 on November 12, 1997, $910.39 on December 7, 1997, $955.91 on January 19, 1998, $955.91 on February 24, 1998, and $910.39 on May 9, 1998, (and possibly others) to the Defendant for a total of at least $5,553.38 . . .

17. From September 1997 through foreclosure in December, 1998 Defendant began a series of aggressive efforts to collect the discharged Debt from [Walls] by telephoning or sending collection letters, notices, and/or demands for payment of the discharged Debt to [Walls] through the U.S. Mail. Such letters contained misleading statements that led [Walls] to believe that they were still personally liable to pay the discharged Debt. Such writings also misstated the fact that [Walls] owed Defendant a balance due on the debt.

18. Beginning in September, 1997, Defendant began to accrue and assess late payment penalties and/or fees against Plaintiff for non-payment of the Debt. Also beginning in September, 1997, Defendant collected interest on a debt that had been discharged." [4]

On January 6, 1999, a Trustee's Deed Upon Sale was recorded reflecting the foreclosure sale of the real property in question.[5]

*The Proposed Class.*

The Amended Complaint sets forth the proposed class definition at paragraph 40. It is:

"40. **Class definition:** The Class consists of all individuals:

a. Who filed a Chapter 7 petition for relief under the Bankruptcy Code;

b. Who listed Defendant as a creditor, against whom Defendant filed a Claim, *or* who owe a debt or alleged debt to Defendant;

c. Who, subsequent to the filing of the bankruptcy petition, did not, execute an agreement, which was subsequently filed with the Bankruptcy Court, with Defendant purporting to reaffirm such debt or alleged debt, or any agreement that is otherwise subject to the provisions of 11 U.S.C. § 524(c); and

d. From whom payments on such prepetition debt or alleged debt were solicited by Defendant *or* who refinanced such pre-petition debt with re-created personal liability on such pre-petition debt." [6]

*The Motion to Deny Class Certification.*

Defendant asks the court to deny class certification before discovery is commenced or completed. According to Defendant, Plaintiff cannot certify a class under any set of facts. Further, Defendant argues that "this Court lacks jurisdiction to enforce or interfere with (or in the alternative, should abstain from enforcing or interfering with) injunctions and other orders issued by other Courts." [7]

Rule 23(c)(1) states that: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be

**4.** Amended Complaint at ¶ ¶ 16, 17, and 18.

**5.** Declaration of Kimberly A. Kralowec in support of motion to deny class certification.

**6.** Amended Complaint at pp. 13–14.

**7.** Notice of Motion and Motion to Deny Class Certification at p. 2.

altered or amended before the decision on the merits."

Plaintiff filed this action in September 1999. The district court dismissed certain claims in the order in which it referred the remaining claims to the bankruptcy court. Thus, by the time the motion to deny class certification was filed, the proceeding had been pending almost a year and a half.

Nonetheless, according to Plaintiff, the motion is premature. Plaintiff

"is not yet ready to bring a motion for class certification. Plaintiff is not ready to define a class which they believe this Court can certify. Plaintiff is also not yet ready to provide evidence to the Court supporting the class definition, including support for Rule 23's numerosity, typicality, commonality and adequacy requirements." [8]

Plaintiff says that "depending on Defendant's policies, practices and procedures concerning collection of discharged debt, Plaintiff may seek to certify a different class than the one proposed in the Amended Complaint." [9]

On the other hand, Defendant says that "based on the nature of the claims Walls raises in her complaint, it is already clear that no class can be certified as a matter of law because Rule 23's requirements cannot be met. The discovery Walls proposes would not change that conclusion." [10] Second, Defendant asserts that the treatment experienced by the named Plaintiff limits the class that Plaintiff can attempt to certify. Thus,

"Walls cannot seek to represent a class of borrowers who made payments be-yond the value of the collateral, even if discovery showed that such borrowers existed, because she did not make such payments herself." Walls "cannot represent a class of which [she is] not a part. *Bailey v. Patterson,* 369 U.S. 31, 33, 82 S.Ct. 549, 550, 7 L.Ed.2d 512 (1962)." [11]

On balance, the court is persuaded that it is appropriate to address the issues raised in Defendant's motion now. If, as a matter of law, a class cannot be certified in this adversary proceeding, it would be a waste of the parties' resources and judicial resources to conduct discovery on class certification. Also, consideration of the motion now is appropriate under Rule 23(c)(1).

At oral argument the Plaintiff asked the court to consider other adversary proceedings that counsel for Plaintiff had filed and was seeking to certify as class actions in the Eastern District of California. After oral argument, Defendant filed, without opposition by Plaintiff, a Supplemental Memorandum of Points and Authorities in support of its motion. The Supplemental Memorandum attaches a copy of a Memorandum Decision by the Honorable Jane Dickson McKeag, Bankruptcy Judge for the Eastern District of California, in *Kibler v. WFS Financial, Inc.* [12] In asking the court to review that memorandum, Defendant asserts that the plaintiffs in *Kibler* raised "the exact same legal theories as Walls raises in this case; in fact, the Kiblers and Walls are represented by the same counsel ... Just 46 days after suit was filed, the Kiblers moved for class certification—a concession by their counsel

---

**8.** Opposition to Motion to Deny Class Certification at p. 13.

**9.** *Id.*

**10.** Reply Memorandum at p. 5.

**11.** Reply Memorandum at p. 6–7.

**12.** *In re Kibler,* Case No. 97–25258–B–7, Adversary Proceeding No. 00–2604, 2001 WL 388764 (2001), hereinafter *"Kibler."*

that early decision was not only possible but appropriate." [13]

*Requirements for Class Certification.*

■ Here, Plaintiff seeks class certification under Rule 23(a) and (b)(3).

To meet the requirements of Rule 23(a), Plaintiff must establish that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

These four requirements are frequently referred to as numerosity, commonality, typicality, and adequacy of representation.

In addition to meeting those requirements, Plaintiff must also meet the requirements of one of the prongs of Rule 23(b). Here, Plaintiff seeks class certification under Rule 23(b)(3). In order to certify a class under Rule 23(b)(3), the court must find

"that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." [14]

Pertinent to a court's findings under Rule 23(b)(3) are:

"(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action." [15]

■ Of course, it is the Plaintiff's burden to establish that the requirements of Rule 23(a) and (b) have been met. *Heaven v. Trust Company Bank,* 118 F.3d 735, 737 (11th Cir.1997). In this case, the court agrees with Plaintiff that the motion to deny class certification, having been brought prior to any discovery, should be construed according to the same legal standards as a motion to dismiss under Rule 12. That is, may a class be certified under Rule 23, under the facts as alleged in the Amended Complaint?

*The Prerequisites of Rule 23(a).*

1. *Numerosity.*

Defendant has not raised a failure to meet the requirement of numerosity as a reason to deny class certification. For that reason and because discovery has not yet commenced in this adversary proceeding, it would be unfair to Plaintiff to deny class certification on the grounds that it has not satisfied the requirement of numerosity. The Amended Complaint states on information and belief that the number of class members is estimated to number in the thousands. There is no evidence before the court as to the size of the class. In this motion, numerosity is simply not an issue.

---

**13.** Supplemental Memorandum of Points and Authorities in Support of Motion to Deny Class Certification at p. 2.

**14.** Federal Rule of Civil Procedure 23(b)(3).

**15.** *Id.*

## 2. Commonality.

### The "Ride Through" Split

■ Defendant has argued that because of the split in the circuits between those that allow a "ride through" of a secured obligation and those that require either reaffirmation, redemption, or surrender of collateral, there is no commonality. The Ninth Circuit, of course, allows a "ride through." *In re Parker*, 139 F.3d 668 (9th Cir.1998).

Bankruptcy Code § 521(2)(A) provides that after filing a Chapter 7 petition, a debtor who has consumer debts secured by property of the estate shall file a statement of intention to retain or surrender the property and, if applicable, specify that the debtor claims the property as exempt, plans to redeem the property, or intends to reaffirm the debt. The expressed intention is to be performed within 45 days. 11 U.S.C. § 521(2)(A) and (B); *In re Parker, supra*, at 672. As expressed by *Parker*, "the circuits are evenly split on whether reaffirmation or redemption of nonexempt property are the debtor's only alternative, or whether following a Chapter 7 filing, a debtor may simply hold on to the collateral securing the loan and continue making payments, without electing whether to redeem the property or reaffirm the debt." *Id.*

In the Second, Fourth, Ninth and Tenth Circuits, debtors who are current on their loan payments on secured property may elect to retain the property and make the payments specified in the contract with the creditor without reaffirming the obligation. This option is often called the "ride through" option. In the remaining circuits, once the debtor decides to retain the property rather than surrendering it, he must redeem the property or reaffirm the debt. *Id.*

### Commonality Issues.

■ The commonality requirement of Rule 23(a)(2)(A) is satisfied if common questions of liability are present, regardless of individual variations and damages. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–20 (9th Cir.1998).

The Ninth Circuit discussed the requirement of commonality under Rule 23(a)(2) in *In re Northern District of California, Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847 (9th Cir.1982). In that case, the district court had conditionally certified plaintiff's claims under Rule 23(b)(1)(B) and (b)(3). *Id.* at 848. The court stated:

"The district court held that the punitive damages class presented common questions about Robins' knowledge of the safety of its product at material times while the Shield was on the market. What Davis, Lerner and Robins knew about the Dalkon Shield, when they knew it, what information they withheld from the public, and what they stated in their advertising to doctors and in their product instructions during various time periods may all be common questions. These questions are not entirely common, however, to all plaintiffs.

Moreover, as the plaintiffs correctly argue, the 50 jurisdictions in which these cases arise do not apply the same punitive damages standards. Punitive damages standards can range from gross negligence to reckless disregard to various levels of wilfulness and wantonness. If commonality were the only problem in this case, it might be possible to sustain some kind of a punitive damage class. But difficulties remain with other certification requirements."

*Id.* at 850.

Here, commonality is a problem as well. The circuits differ with respect to allowing the "ride through" option. The differences

among the circuits with respect to the "ride through" option create a problem.

The requirements of commonality under Rule 23(a) are difficult to distinguish from the requirements of Rule 23(b).

> "It should be noted that Rule 23(a)(2) actually may be a superfluous provision, or at least partially redundant, since the existence of common questions can be viewed as an essential ingredient of a finding that the case falls within one of the three categories of class actions described in subdivision (b).... Finally, an action is maintainable under Rule 23(b)(3) only if there is a finding that common questions predominate over individual issues. Since this obviously is a more stringent standard than that prescribed by Rule 23(a)(2), subdivision (a)(2) would be satisfied anytime the court finds that the subdivision (b)(3) test has been met." [footnotes omitted] [16]

*See* discussion of Rule 23(b)(3), infra.

*The Typicality Requirement of Rule 23(a)(3).*

■ To satisfy this requirement, the Plaintiff's claim need not be identical to the claims of the class. "It is sufficient that the plaintiff's claim be based on the same legal theory and arose from the same practice or course of conduct." *In re Coggin*, 155 B.R. 934, 938 (Bankr.E.D.N.C. 1993) (citations omitted).

The named Plaintiff here, Donna Walls, lost the property subject to Defendant's deed of trust to foreclosure after making post-discharge payments to Defendant of around $5,500.[17] Plaintiff resides in the Ninth Circuit, a "ride through" jurisdiction.

The proposed class is all Chapter 7 debtors who listed Defendant as a creditor, against whom Defendant filed a proof of claim or who owe or owed an alleged debt to the Defendant; who did not execute a reaffirmation agreement; and from whom Defendant solicited payments on prepetition debt or refinanced prepetition debt with recreated personal liability.

In the *Kibler* Memorandum Decision, Judge McKeag described the problems with meeting the typicality requirement succinctly. This court adopts that discussion, which is set forth below:

> "Plaintiffs limit the proposed class to all chapter 7 debtors from whom Defendant solicited payments on pre-petition debts without an executed reaffirmation agreement. As written, the proposed definition of the class would include at least three groups of debtors: those who retained their property without reaffirming the debt, those who surrendered it, and those who redeemed it. With respect to each group, Defendant must have solicited payment of its pre-petition loans.
>
> Plaintiffs complain that receipt of Defendant's continued monthly billings without a valid reaffirmation agreement violated their rights under the Bankruptcy Code. The propriety of Defendant's collection practices will depend, however, on which group of debtor class members is affected. For instance, solicitation of payment from those debtors who elected to surrender Defendant's collateral would seem an obvious violation of the automatic stay and discharge injunction. On the other hand, Debtors who exercised their right to redeem the collateral for its fair market value have not been injured by not executing a reaffirmation

---

**16.** Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d. § 1763.

**17.** Amended Class Action Complaint at ¶ 16.

agreement. Plaintiffs do not belong to and have little in common with either group. Rather, Plaintiffs are among those individuals who did not formalize their election under section 521(2)(A), opting to retain Defendant's collateral without actually reaffirming the debt. Plaintiffs' claims even conflict with the interests of other potential class members who are similarly situated. In jurisdiction that recognize the 'ride-though [sic]' option, debtors may want to preserve their property, yet not incur the potential personal liability imposed by a reaffirmation agreement. These debtors, unlike Plaintiffs, need to receive normal monthly billings to avoid a contract default and potential foreclosure. What constitutes acceptable communication between a secured creditor and a debtor taking advantage of the "ride-through" option varies on a case-by-base basis and even from court to court. (n. 4, See, Defendant's Request for Judicial Notice, Exs. B, D, D.) For example, the conduct complained of by Plaintiffs, Defendant's continuation of its customary pre-petition billing practices, is ordered by some bankruptcy judges. Plaintiffs seek to disallow the same conduct that many similarly situated debtors welcome and some courts order.

Plaintiffs face the 'Parker' defense, which is unique to four circuits. The rights of debtors in jurisdictions that do not accept the 'ride-through' option are more circumscribed. In these jurisdictions, a debtor cannot escape personal liability and still retain the collateral. If a debtor fails to either redeem or surrender the property or reaffirm the debt, the creditor's remedy is to obtain relief from stay. The availability of the

Parker defense against the Plaintiffs will become the focus of this litigation, yet that defense involves only some class members.

The inclusion of class members who either surrendered or redeemed their collateral is a problem of definition that could be remedied. Nonetheless, Plaintiff's claims are not typical of the remaining debtors who exercised the 'ride-through' option or those who could not retain collateral without reaffirmation. Plaintiffs have not met the typicality requirement." [18]

*Adequacy of Representation Under Rule 23(a)(4).*

■ Whether this requirement is met depends on whether Plaintiff's attorney is qualified and experienced enough to conduct the proposed litigation and whether the Plaintiffs have an interest consistent with the interests of the class. *In re Coggin, supra,* at 934. As set forth above, the potential class contains diverse members with differing interests. Members of the class in "ride through" jurisdictions who wish to retain the collateral and continue to make payments on it have interests very different from members of that class who wish to surrender the collateral. If successful, it appears likely that Plaintiff's lawsuit would prohibit exercise of the "ride through" option. As someone who lost the collateral to foreclosure after making post-discharge payments, the named Plaintiff will benefit from any award of damages, punitive damages, or sanctions. Members of the putative class who wish to continue making payments under the "ride through" option would undoubtedly prefer to continue getting monthly billing statements than have an award of damages

**18.** *Kibler v. WFS Financial, Inc.;* United States Bankruptcy Court for the Eastern District of California, Case No. 97–25258–B–7, Adversary Proceeding No. 00–2064, 2001 WL 388764; Memorandum Decision entered March 20, 2001, at pp. 9:7–11:4.

based on Defendant having sent monthly billing statements. Therefore, the typicality requirement has not been met.

*Certification Under Rule 23(b)(3).*

■ To certify a class under Rule 23(b)(3), the court must find that the questions of law or fact common to all the members of the class predominate over questions affecting only individual members ("predominance analysis") and that a class action is superior to other available methods to resolve the controversy ("superiority analysis"). *Castano v. American Tobacco Company,* 84 F.3d 734, 738–740 (5th Cir.1996).

These requirements create significant problems for Plaintiff. The existence of the "ride through" option in some circuits means that the questions of law are different among the members of the class. Questions of fact are also different. Some members of the class likely wish to continue making payments post-discharge and without reaffirmation while others do not.

Another reason that this requirement has not been met is that Plaintiff is limited here to damages for violation of the automatic stay and contempt of court for violation of the discharge injunction.[19] Defendant has suggested that only the issuing bankruptcy court has jurisdiction to enforce its own automatic stay and discharge injunction and so no class may be certified.

The court is not persuaded by this argument. There are apparently no decisions from the Ninth Circuit on this issue. But two decisions, one by the First Circuit Court of Appeals and one by the Bankruptcy Court for the Southern District of Alabama, are persuasive. *Bessette v. Avco*

*Financial Services, Inc.,* 230 F.3d 439 (1st Cir.2000); *In re Noletto,* 244 B.R. 845 (Bankr.S.D.Ala.2000).[20] The injunctions set forth at 11 U.S.C. § 362(a) (the automatic stay) and 11 U.S.C. § 524(a) (the discharge injunction) are Code created, statutory injunctions. They are the same in every bankruptcy case filed in every bankruptcy court of the United States. Their extent does not depend on individual orders for injunctive relief fashioned by individual bankruptcy judges.

That having been said, by the very nature of the Plaintiff's claims, it appears that individual issues outnumber common issues. Fashioning a remedy for injunctive relief would require different forms of injunction in "ride through" jurisdictions from jurisdictions that do not allow a "ride through." Further, while the complaint seeks injunctive relief, the injunctions that Plaintiff requests are already a part of the Bankruptcy Code.[21] The more primary remedies sought are damages under 11 U.S.C. § 362(h) and contempt for violation of the discharge injunction.

■ Section 362(h) requires a wilful violation of the automatic stay in order for an individual to recover damages. For a violation of the automatic stay to be wilful, the creditor does not have to have a specific intent to violate the automatic stay. It is sufficient if the creditor knew of the automatic stay and intended the acts in violation of the stay. *In re Goodman,* 991 F.2d 613, 618 (9th Cir.1993); *Sciarrino v. Mendoza,* 201 B.R. 541 (E.D.Cal.1996). A similar standard should apply under § 524.

"Since section 524 is an injunction similar to the automatic stay, it is unlikely

---

19. Plaintiff has appealed the order of the district court dismissing its other claims for relief.

20. The Seventh Circuit Court of Appeals has expressed a different view. *Cox v. Zale Delaware, Inc.,* 239 F.3d 910, 917 (7th Cir.2001).

21. 11 U.S.C. § § 362(a) and 524(a).

that the Ninth Circuit would hold otherwise with respect to a violation of section 524. Section 524 is the basis of a debtor's 'fresh start.' "

*Sciarrino v. Mendoza,* at 546.

But the creditor's good faith or lack thereof will be relevant to sanctions for contempt of the discharge injunction and to a consideration of punitive damages under § 362(h).

"[N]ot every violation of the section 362 automatic stay should result in punishment to the offender ... Certain section 362 stay violations are technical in nature and need no punishment to deter further violations ... The automatic stay afforded by section 362 is intended to be a shield protecting debtors and their estates, and should not be used as a sword for their enrichment."

*In re McHenry,* 179 B.R. 165, 168–169 (9th Cir. BAP 1995).

Any damages for an injury for violation of the automatic stay awarded under § 362(h) or sanctions for contempt for violation of the discharge injunction will of necessity be fact specific to the particular bankruptcy case in which such damages or contempt sanctions are sought. That is, the extent of damages under § 362(h) will depend not just on the class-wide behavior of Defendant (assuming for the sake of argument that there is "class wide" behavior) but on the extent of damages to each individual debtor. Similarly, any sanctions under the court's power to issue contempt orders must be predicated on the extent of the injury to the debtor in question. The degree of "wilfulness" will also be case-specific and depend on notice or lack thereof to Defendant of a particular bankruptcy case. For these reasons, the court is not persuaded that common questions predominate over questions affecting only individual members. The questions with respect to the damages for violation of the

automatic stay and sanctions for contempt will be highly case specific.

Therefore, the proposed class does not meet the requirements of Rule 23(b)(3).

*Conclusion.*

As set forth above, the class as presently proposed cannot be certified. Therefore, by separate order the motion will be granted. Due to the procedural posture of this motion, however, the motion is granted with leave to amend. Plaintiff has characterized the motion as the functional equivalent of a motion to dismiss. The court agrees. Plaintiff will have twenty (20) days from the date of entry of the order granting the motion to file a Second Amended Complaint, amending the description of the proposed class.

The status conference will be reset for June 5, 2001, at 1:30 p.m.