In re Michael **PETERSON** and
Elizabeth Peterson,
Debtors.

Michael Peterson and Elizabeth
Peterson, Plaintiffs,

v.

**Wells Fargo Bank, N.A., Defendant.**

Bankruptcy No. 97–20751–B–7.
Adversary No. 01–2302.

United States Bankruptcy Court,
E.D. California.

May 9, 2003.

Ronald S. Goldser, Minneapolis, MN, Carleton B. Crutchfield, Robert F. Mitsch, St. Paul, MN, Craig S. Miller, San Francisco, CA, for plaintiffs.

Mark D. Lonergan, Rhonda L. Nelson, Severson & Werson, A Professional Corporation, San Francisco, CA, for defendant.

### MEMORANDUM DECISION

JANE DICKSON MCKEAG,
Bankruptcy Judge.

Plaintiffs Michael and Elizabeth Peterson (the "Plaintiffs") seek certification for the class definition contained in their Third Amended Complaint (the "Complaint").[1] The court concludes, as discussed below, that the present definition suffers from the same infirmities as the two prior definitions.

### I. BACKGROUND

*Prior Proceedings*

On September 22, 1999, the Plaintiffs filed this class action in the District Court for the Eastern District of California to "remedy" conduct by defendant Wells Fargo Bank (the "Bank"), specifically, its practice of collecting discharged obligations by automatic withdrawals from debtors' bank accounts. The Bank brought a motion to dismiss this adversary proceeding while the Plaintiffs brought a motion to refer it to the bankruptcy court.

On August 17, 2000, the District Court entered its order granting the motion to dismiss, but denying the motion to refer. The District Court order dismissed the causes of action in the original complaint based on alleged violations of the discharge injunction, the Fair Debt Collection Practices Act and RICO. That order gives the Plaintiffs leave to amend only the RICO cause of action. By further order entered on November 30, 2000, the District Court also dismissed causes of action for declaratory relief, injunctive relief, accounting and attorneys' fees to the extent they were based on the dismissed causes of action.

On January 2, 2001, the Plaintiffs filed their first amended class action complaint, which contained only two causes of action. In those remaining causes of action, the

---

1. Although denominated as a "(Proposed) Second Amended Complaint" in the concurrently filed motion to amend, the Second Amended Complaint was filed herein on October 26, 2001.

Plaintiffs seek damages under 11 U.S.C. § 362(h) for willful violation of the automatic stay and contempt of court for intentional violation of the discharge injunction imposed pursuant to 11 U.S.C. § 524.

Prior to the Plaintiffs' filing the first amended complaint, the Bank had moved to deny class certification. On June 6, 2001, the United States District Court referred the entire action, including the then pending motion to deny class certification, to this court for all further proceedings. On September 26, 2001, the court granted the Bank's motion with leave to the Plaintiffs to amend the complaint.

On October 26, 2001, the Plaintiffs filed their Second Amended Class Action Complaint. The only difference between the Second Amended and First Amended Complaints was in the definitions of the purported class. The factual allegations were identical.

On April 5, 2002, the Bank filed a renewed motion for an order denying class certification. As part of their opposition to the renewed motion, the Plaintiffs requested that the court certify the class based on a proposed definition not in the Second Amended Complaint. On June 6, 2002, the court granted the Bank's motion to deny certification. The order granting the motion required that the Plaintiffs file a motion, rather than providing automatic leave, to amend.

On February 14, 2003, the Plaintiffs filed a motion to amend the complaint and to certify the class defined in the proposed amended complaint. On April 23, 2003, the court granted the request to amend the complaint, but took the question of class certification under submission.

There are only two differences between the Second Amended Complaint and the Third Amended Complaint. First, the Third Amended Complaint eliminates paragraph 32 from the Second Amended Complaint, which recited the requirements set forth in 11 U.S.C. § 524(c) regarding the enforceability of reaffirmation agreements. The second change is in the class definition proposed by the Complaint.

*The Complaint's Factual Allegations*

On January 17, 1997, the Plaintiffs filed a voluntary chapter 7 case in the Eastern District of California. They received their discharge on April 30, 1997.

The Plaintiffs had a pre-petition loan with the Bank, which was secured by a 1994 Toyota Corolla. Prior to their bankruptcy, the Plaintiffs made monthly payments to the Bank in the amount of $314.93. The Bank was scheduled as a creditor in the Plaintiffs' bankruptcy case and presumably received notice of their bankruptcy filing.

After the bankruptcy filing, the Bank continued its prior practice of making automatic withdrawals from the Plaintiffs' bank account on account of its vehicle loan. From February 1997 through August 1999 the Plaintiffs made 31 monthly payments to the Bank, totaling $9,762.83. The alleged value of the Toyota Corolla on the petition date was $5,500.

The Plaintiffs allege that the Bank sent them letters indicating that they were personally liable for the car loan. Although the Complaint states that one such example is attached, the Complaint includes no attachments.[2]

The Complaint further states that the alleged practices by the Bank are representative of a common course of conduct,

---

**2.** The original complaint contained a letter from the Bank to Plaintiffs regarding a change in their loan number. That letter does not appear to contain any reference, direct or indirect, to the Plaintiffs' personal liability for the car loan.

adopted as part of the Bank's standard policies and procedures.

*Class Definition*

The class definition, set forth in paragraph 38 of the Complaint, defines the class as all individuals:

1. Who filed a chapter 7 petition for relief;

2. As to whom Defendant received notice of the Bankruptcy;

3. Who, subsequent to the filing of the bankruptcy petition, did not reaffirm the debt pursuant to 11 U.S.C. § 524(c), did not redeem the collateral pursuant to 11 U.S.C. § 722 or did not surrender to Defendant the collateral; and

4. From whom payments on such prepetition debt were automatically withdrawn from the individual's bank account, savings account, or payroll check where Defendant did not obtain the individual's authorization for continued withdraw following notice of the debtor's bankruptcy.

## II.  APPLICABLE LAW

To obtain class certification, the Plaintiffs must satisfy a two-part statutory test. First, they must establish all four elements of Rule 23(a), and, second, at least one prong of Rule 23(b).

In pertinent part, Rule 23(a) provides that:

[o]ne or more members of a class may sue ... on behalf of [the class] only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the [class representative] are typical of the claims or defenses of the class, and (4) the [class representative] will fairly and adequately protect the interests of the class.

These four prerequisites of Rule 23(a) are generally referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively.

In addition to satisfying the elements of subdivision (a), the action must comply with one of the subdivisions contained in Rule 23(b). The Complaint alleges that subsection (b)(3) applies, which states as follows:

(3) ... the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Subsection (b)(3) has two components, predominance of common issues of fact or law and superiority of a class action over individual litigation.

## III.  DISCUSSION

The court will not repeat here the discussion of the *Parker* defense, or so-called "ride-through" option, which was contained in its initial Memorandum Decision herein filed on September 26, 2001, which incorporated the court's decision in *Kibler v. WFS Financial,* E.D.Cal. Adversary No. 00–2604, as well as in *In re Walls,* 262 B.R. 519, 525 (Bankr.E.D.Cal. 2001).

In the prior proceedings, the *Parker* defense made class certification impossible. Viewed from a nationwide perspective, the fourth option of retaining the collateral without reaffirming the debt created irreconcilable differences among the *Parker* and non-*Parker* jurisdictions. *See Walls,* 262 B.R. at 528. Within the Ninth Circuit or other "ride-through" jurisdictions, the plaintiffs' claims in these prior cases were at odds with similarly situated class members who wanted to retain their collateral and make payments without assuming per-

sonal liability for the obligation. *Walls*, 262 B.R. at 526–27 [quoting *Kibler*].

The Plaintiffs contend that the problems with earlier versions of the complaint herein and the complaints in the other cases have been cured by the narrower definition contained in the Complaint. Specifically, the Complaint is now limited to those situations where the Bank took automatic withdrawals from debtors' bank accounts without first obtaining their permission.

According to the Plaintiffs, the proposed class definition meets the requirements of Rule 23 because the Bank's conduct is *per se* illegal. *See* Plaintiffs' Memorandum in support of motion to amend. The Plaintiffs attempted to retreat from this argument in their reply brief and during oral argument by asserting that the court could certify the class and then consider "the simple premise in this lawsuit [of] whether continued post-discharge collection of automatic withdraws from a debtor's bank account violates the [Bankruptcy] Code." Plaintiffs' Reply Brief, page 4, lines 18–19. Unfortunately, this argument glosses over important fact-specific differences among the individual class members that prevent the court from deciding whether the practice of automatic withdrawals without authorization is either entirely legal or illegal. Instead, as discussed below, a decision regarding the legality of post-petition automatic withdrawals depends on whether the parties are in a *Parker* jurisdiction and then on the given conduct in each individual case.

The cases cited by the Plaintiffs for the proposition that post-petition continued automatic withdrawals violate the automatic stay and discharge injunction arose in non-*Parker* jurisdictions. *See, e.g., In re Walker*, 180 B.R. 834 (Bankr.W.D.La. 1995); *In re Raper*, 177 B.R. 107 (Bankr. N.D.Fla.1994); *In re O'Neal*, 165 B.R. 859 (Bankr.M.D.Tenn.1994). In these cases, the creditor continued to accept post-petition withdrawals on account of *unsecured* dischargeable debts. These decisions rejected the creditors' defense that the automatic withdrawals constituted voluntary repayments of dischargeable debt authorized by 11 U.S.C. § 524(f). According to these courts, a creditor would need to demonstrate the "voluntary" nature of the payment with a clear expression or indication by the debtor of his or her willingness to continue the payments. Courts in *Parker* jurisdictions would presumably reach the same result with respect to unsecured obligations.

The situation is different with respect to secured obligations in a *Parker* jurisdiction. Under *Parker*, a debtor may continue to use a vehicle without reaffirming the underlying debt. This option favors debtors because they are not exposed to personal liability as a condition of retaining collateral. However, a secured creditor faces greater risks in *Parker* jurisdictions because its post-discharge remedies are limited to its collateral. A creditor, therefore, has every incentive to proceed promptly against the collateral after default. From the debtor's perspective, maintaining normal monthly payments is critical to not losing the collateral to repossession. Automatic withdrawals facilitate regular payments and minimize the risk of post-petition default.

The question, therefore, of what constitutes "consent" to continued automatic withdrawals with respect to retained collateral in a *Parker* jurisdiction will vary from individual to individual and court to court. Consent might be nothing more than a debtor's indication in the Statement of Intentions (Official Form No. 8) that the collateral is to be reaffirmed, or at least not surrendered. Mere retention of the collateral, without redemption or surren-

der, might be deemed tacit consent sufficient to continue payments by automatic withdrawals. Demonstration of lack of consent, too, will vary on an individual basis. For example, communications between a bank and the debtor might evidence such lack of consent.

This court could not establish a blanket rule as to the legality of automatic withdrawals to pay an obligation secured by retained collateral. The conduct the Plaintiffs complain about is welcomed by some potential class members and even ordered by some courts in *Parker* jurisdictions. A blanket rule prohibiting automatic withdrawals absent explicit consent by a debtor could jeopardize a debtor's right to retain collateral without any personal liability for the loan, an advantage only debtors in *Parker* jurisdictions enjoy.

### IV. CONCLUSION

For the reasons stated in the *Kibler* and *Walls* decisions, as well as the prior Memorandum Decisions herein, the present class definition does not satisfy either the "typicality" requirement of Federal Rule of Civil Procedure 23(a)(3) or the "adequacy" requirement of Rule 23(a)(4). The class may not be certified under Rule 23(b)(3) because common questions of law and fact do not predominate over issues affecting individual class members.