**In re MERRILL LYNCH, et al. Securities Litigation.**

**No. 94–5343 (DRD).**

United States District Court, D. New Jersey.

Nov. 8, 1999.

Irving Morris, Karen L. Morris, Seth D. Rigrodsky, James A. McShane, Morris & Morris, Wilmington, Delaware, lead counsel for plaintiffs.

Paul J. Dillon, Bloom, Rubinstein, Karinja & Dillon, P.C., Livingston, New Jersey, liaison counsel for plaintiffs.

David Brownlee, Michael J. Lynch, Kirkpatrick & Lockhart, LLP, Pittsburgh, Pennsylvania, Brian F. Amery, Bressler, Amery & Ross, Florham Park, New Jersey, for Merrill Lynch, Pierce, Fenner, & Smith, Inc.

Robert B. McCaw, Robert F. Hoyt, Wilmer, Cutler & Pickering, Washington, D.C., for Paine Webber, Inc.

William H. Pratt, Frank Holozubiec, Kirkland & Ellis, New York City, for Dean Witter Reynolds, Inc.

## OPINION

DEBEVOISE, Senior District Judge.

This is a civil action alleging securities fraud against three broker-dealers which participate as market makers in the National Association of Dealers Automated Quotation System ("NASDAQ") market. The matter is presently before the Court on plaintiffs' motion for certification as a class action. For the reasons set forth below, plaintiffs' motion will be denied.

## STATEMENT OF FACTS

The factual background of this action has been fully described in the decision granting defendants' motion for summary judgment and the Court of Appeal's subsequent *en banc* reversal of that decision. *See In re Merrill Lynch, Securities Litig.*, 911 F.Supp. 754 (D.N.J.1995); *Newton v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 135 F.3d 266 (3d Cir.) (*en banc*), *cert. den'd*, 525 U.S. 811, 119 S.Ct. 44, 142 L.Ed.2d 34 (1998).

To summarize, plaintiffs are investors who purchased and sold securities on the NASDAQ market during a period from November 2, 1992 to August 28, 1996 ("the class period"). Defendants are broker-dealers who accepted buy and sell orders from plaintiffs and routinely executed these orders for NASDAQ stocks at prices equivalent to "National Best Bid and Offer" price displayed on the NASDAQ Level 2 Screen ("the NBBO"). Plaintiffs allege that during the class period defendants were able, through the use of private online trading services such as SelectNet and Instinet, to execute orders at better prices for their investors than the NBBO but failed to do so, thereby inflating their profit margin at the expense of the investors. Defendants are also alleged to have failed to "cross" customer orders and to match customer orders with in-house limit orders, two other methods which plaintiffs allege would have obtained a better price for defendants' investor clients than the current NBBO quote.

It is plaintiffs' contention that these practices violated Section 10 of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder in that: 1) defendant brokers intentionally misrepresented to plaintiffs that they would execute plaintiffs' orders so as to maximize plaintiffs' economic benefit; 2) defendants, at the time the order was received, intended to execute orders at the NBBO price even if better prices were reasonably available from other online services, and; 3) plaintiffs suffered damages as a result of this conduct.

I granted summary judgment to defendants in part because I found that the "duty of best execution" was sufficiently ill-defined that execution of orders at the NBBO price could not, as a matter of law, be found inconsistent with that duty; and because I found that defendants could not, as a matter of law, have acted with the requisite scienter. The Third Circuit reversed, holding that:

> On the record before us, we believe a reasonable trier of fact could conclude that the defendants misrepresented that they would execute the plaintiffs' orders so as to maximize the plaintiffs' economic benefit, and that the misrepresentation was intentional or reckless because, at the time it was made, the defendants knew that they intended to execute the plaintiffs' orders at the NBBO price even if better prices were reasonably available. A reasonable trier of fact could thus find scienter with respect to a material misrepresentation, as well as the other elements essential to a Section 10(b) fraud claim.

*Newton*, 135 F.3d at 274. The Court of Appeals stated that its analysis was also generally applicable to plaintiffs' claims that it was reasonably feasible for defendants to "cross" customer orders on opposite sides of a transaction and match customer orders with in-house limit orders. *Id.* at 274, n. 6.

Plaintiffs now seek to certify this litigation as a class action, pursuant to Fed.R.Civ.P. 23. Plaintiffs propose a class, with the usual exceptions, of "all persons who placed market orders with Merrill Lynch, Dean Witter or PaineWebber to purchase or sell shares of NASDAQ stock between November 4, 1992 and August 28, 1996," to be divided into three subclasses. The subclasses would consist of investors who placed orders with each individual defendant brokerage firm, i.e. the

Merrill Lynch subclass, the Dean Witter subclass, and the PaineWebber subclass.

## DISCUSSION

■ In order to receive certification as a class action, plaintiffs must comply with the four prerequisites of Fed.R.Civ.P. 23(a), and must also satisfy the requirements of Rule 23(b)(3). *See Baby Neal for and by Kanter v. Casey,* 43 F.3d 48 (3d Cir.1994); Fed. R.Civ.P. 23. In addition, a class must be adequately defined so that the individual class members may be easily identified. *See In re School Asbestos Litigation,* 56 F.3d 515, 519 (3d Cir.1995); *Adames v. Mitsubishi Bank, Ltd.,* 133 F.R.D. 82, 88 (E.D.N.Y. 1989). Rule 23(a) states that certification will be available only if:

1) the class is so numerous that joinder of all members is impracticable;

2) there are questions of law or fact common to the class;

3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and;

4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Rule 23(b)(3) permits certification only where the court finds that the common questions of law or fact predominate over questions affecting only individual members and that a class action is the superior method for fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3). The requirements of Rule 23 are meant to ensure that class action treatment "makes sense," in that it is necessary, efficient, and fair to the interested parties. *Casey,* 43 F.3d at 55. "Class treatment makes no sense if there are no common issues; the trial court would gain nothing but logistical headaches from the combination of the cases for trial." *Id.* at 55. It is necessary to determine whether this action meets the Rule 23 criteria.

■ There can be no question that the prerequisites of Rule 23(a)(1) are met. There are potentially thousands of class members distributed throughout the United States who bought or sold NASDAQ stocks through the defendants. Joinder of all of them is impracticable.

There are clearly questions of law or fact common to the class. The Court of Appeals in *Newton* articulated the law. In general

> To state a claim for securities fraud under § 10 of the Securities [Exchange] Act of 1934 and Rule 10b–5, plaintiffs must demonstrate: (1) a misrepresentation or omission of a material fact in connection with the purchase or sale of a security; (2) scienter on the part of the defendant; (3) reliance on the misrepresentation; and (4) damage resulting from the misrepresentation.

135 F.3d at 269.

The Court noted that the parties agree: 1) "that a broker-dealer owes to the client a duty of best execution;" 2) "that a broker-dealer, by accepting an order without price restrictions, impliedly represents that the order will be executed in a manner consistent with the duty of best execution," and; 3) "that a broker-dealer who accepts such an order while intending to breach that duty makes a misrepresentation that is material to the purchase or sale." *Id.* at 269. A key factual issue in the case, as defined by the Court of Appeals, is whether "the implied representation [of best execution] made by the defendants included a representation that they would not execute at the NBBO price when prices more favorable to the client were available from services like SelectNet and Instinet." *Id.* at 269–70.

Determination of the issue of misrepresentation and the related issue of scienter requires an examination of whether it was feasible, during some or all of the class period, to execute trades through SelectNet and Instinet when prices more favorable than NBBO prices were available, a factual inquiry into all of the circumstances of a particular trade, an evaluation at the time of each trade of evolving changes in technology and transformation of the structure of financial markets, the number of primary markets checked and the location and accessibility to the customer's broker-dealer of primary markets and quotation services.

The Court of Appeals examined all of the evidence in the record, that produced by plaintiffs and that produced by defendants, and concluded that there was an issue of fact as to whether "by the time of the class period, both technology and over-the-counter markets had developed to a point where it was feasible to maximize the economic benefit of the client by taking advantage of better prices than NBBO," *id.* at 272, and if so whether "defendants' misrepresentation, namely, that they would execute plaintiffs' trades in a manner maximizing plaintiffs' economic gains, was at least reckless, if not intentional." *Id.* at 273.

Defendants contend that a finding of misrepresentation and scienter must be made in the context of each trade. There would be a failure of best execution only if at the precise time when the buy or sell order was given there was a better price available on Select-Net or Instinet for the same quantity of securities. Further, as the Court of Appeals noted:

> [o]ther terms in addition to price are also relevant to best execution. In determining how to execute a client's order, a broker-dealer must take into account order size, trading characteristics of the security, speed of execution, clearing costs, and the cost and difficulty of executing an order in a particular market ... When the plaintiffs state that better 'prices' were reasonably available from sources other than the NBBO, we understand that to mean that, given an evaluation of price as well as all of the other relevant terms, the trade would be better executed through a source of liquidity other than the NBBO ...

*Id.* at 270, n. 2.

Defendants' contention that there can be no misrepresentation unless there is proof that the potential class members did not receive best execution for their particular trades is mistaken. There can be a misrepresentation made with scienter even if no damage results. However, misrepresentation and scienter alone are not enough. These considerations bear significantly upon other class certification criteria; they do not, however, preclude a finding that the issues of misrepresentation and scienter present questions of fact common to the class.

■ Turning to the other elements of a Rule 10b–5 claim, reliance and damages, it is evident that common questions of fact do not prevail. Certification of a class under Rule 23 cannot relieve the individual class members from establishing each element of their claims. *See Kyriazi v. Western Elec. Co.,* 647 F.2d 388, 394–95 (3d Cir.1981) ("individual relief usually must respond to harm actually suffered by individual class members. To accomplish and limit such relief, the trial court must request from class members the facts of their individual claims"); *see also Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2244, 138 L.Ed.2d 689 (1997) (noting that use of Rule 23 shall not "abridge, enlarge or modify any substantive right", *quoting* 28 U.S.C. § 2072(b)).

■ A claim for securities fraud under Rule 10b–5 requires more than simply showing that a material misrepresentation has been made with scienter. "The party seeking to represent a class must establish that all members of the purported class have suffered damages." *Illinois v. Ampress Brick Co.,* 67 F.R.D. 457, 460 (N.D.Ill.1975). To state a claim for securities fraud under § 10 of the Securities Exchange Act of 1934 and Rule 10b–5, plaintiffs must demonstrate, in addition to a misrepresentation or omission of material fact in connection with the purchase or sale of a security and scienter on the part of the defendant, reliance on the misrepresentation and *damage resulting from the misrepresentation. Newton,* 135 F.3d at 269 (emphasis added).

■ As defendants contend, the transactions in which defendants (and, undoubtedly members of the proposed class) involved multiple circumstances which bear decisively upon the existence of reliance and damages. The degree of sophistication of the putative class members varies widely. Some, no doubt, were new to the world of NASDAQ trading; some were institutional investors. Among the plaintiffs and proposed class members, there were those who were not concerned about price, others who placed limit orders to secure a particular price, or

still others who wanted an immediate sale or purchase.

Most critical is the fact that whether a class member suffered damages would have to be determined on a trade by trade basis. If at the time a trade was executed no better price was available from other sources or through a cross customer order or an in-house order, there would be no damages. At the time of the original summary judgment motion in this court damages under plaintiffs' theory of liability measured by comparative prices were shown in only one transaction. The record as it is presently constituted requires the conclusion that in a large number of transactions there were no better prices from other sources. Further, as the Court of Appeals noted, "[o]ther terms in addition to price are also relevant to best execution." 135 F.3d at 270, n. 2. Thus, under plaintiffs' theory of liability some class members would have suffered damages; while some would not have suffered damages.

This case is significantly different from the fraud on the market cases upon which plaintiffs rely. Here, there is no generic misrepresentation or omission that uniformly across the market affected a security's value, causing each purchaser to be injured by the same inadequate disclosure, see, e.g., Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 122 F.R.D. 177 (E.D.Pa.1988).

Nor is the case comparable to In re Prudential Ins. Co. of America Sales Practices Litig., 962 F.Supp. 450 (D.N.J.1997), aff'd and vacated on other grounds, 148 F.3d 283 (3d Cir.1998). There the court certified a class consisting of persons who were victims of "sales presentations containing standardized, coordinated, and uniformly deceptive sales representations and omissions." 962 F.Supp. at 512. This is in contrast to the present case where members of the putative class engaged in transactions under widely differing circumstances and, under plaintiff's theory, may or may not have suffered damages.

On point is Georgine v. Amchem Prods., Inc., 83 F.3d 610 (3d Cir.1996), aff'd sub nom. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Although in Georgine, as in the pres-

ent case, there were several common questions, the Court held that class treatment was inappropriate because "each individual plaintiff's claim raises radically different factual and legal issues from those of other plaintiffs ... In such circumstances, the predominance requirement of Rule 23(b)(3) cannot be met." Georgine at 618.

Proof of damage, which is an essential element of the cause of action itself, must be distinguished from the mere calculation of damages. See Sowell v. Butcher & Singer, Inc., 926 F.2d 289, 297 (stating that an element of a 10b–5 claim "is the necessity for proof of damages flowing from the defendants' conduct"). This distinction has been aptly noted in other areas of the law as well:

the fact of damage is distinct from the issue of actual damages. Fact of damages pertains to the existence of injury, as a predicate to liability; actual damages involve the quantum of injury, and relates to the appropriate measure of individual relief. Although actual damages typically require the courts to become involved in individual calculations of damages, this has been held to be an insufficient basis for denying class certification where the common issues relevant to liability can be established on a classwide basis. In such instances, bifurcated trials have been used to separate the common issue of liability from the individual question of actual damages ... Class treatment of damages issues, however, presumes the ability to prove fact of damage without becoming enmeshed in individual questions of actual damage ... Where proof of fact of damage requires evidence concerning individual class members, the common questions of fact become subordinate to the individual issues, thereby rendering class certification problematic.

Martino v. McDonald's System, Inc., 86 F.R.D. 145, 147 (N.D.Ill.1980) (citations omitted). See also In re Electric Weld Steel Tubing Antitrust Litigation, 1980 U.S.Dist. LEXIS 9604, *8:

the fact that each class member has been damaged (fact of damage) is an element which each plaintiff must prove to establish defendants' liability. This being the

case, that element must be provable on a common basis in order for 'a class action [to be] superior to other available methods for the fair and efficient adjudication of this controversy.' ... Bifurcation of the trial would not cure this problem, as separate damage trials would establish only the amount of damages due each plaintiff. The fact of damage must be proven in the liability phase.

*quoting* Fed.R.Civ.P. 23(b)(3).

Plaintiffs argue that fact of injury can be presumed because "this case is predicated on material omissions of fact, unaltered throughout the class period ... defendants injured all of the plaintiffs because their failures to disclose their Nasdaq stock execution practices fraudulently induced plaintiffs to place their orders." Plaintiffs' Answering Memorandum to Sur–Reply at 8. Plaintiffs cite to *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 152–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), in which the Supreme Court held that where a defendant engages in a course of business which operates as a fraud upon the investor, "positive proof of reliance is not a prerequisite to recovery." The case is inapplicable here. Proof of reliance is simply not the same thing as proof of damages resulting from that reliance. While defendants' alleged conduct may be deemed a material misrepresentation made with scienter, and even assuming plaintiffs relied on the misrepresentation in deciding to purchase or sell securities, absent proof of classwide pecuniary loss resulting from that reliance, there can be no classwide claim for securities fraud.

To reiterate, a class member who relied on defendants' representation that the duty of best execution would be fulfilled cannot establish liability for securities fraud unless he or she can also show that he or she was injured as a result of that reliance. Implicit in Rule 23's requirements is a showing that those persons sought to be included in the class have all suffered some harm to which the common questions of law or fact apply. *Ampress Brick*, 67 F.R.D. at 459. In order to show injury, a class member would have to establish that, at the time when he or she purchased or sold securities, a better price

was available through one of the alternative sources but was not obtained, resulting in pecuniary loss to the class member. If the NBBO price was, in fact, the best price available at the time the securities were purchased or sold, then the class member has suffered no loss whatsoever and has no claim for securities fraud. The question of damages is further individualized because "[o]ther terms in addition to price are also relevant to best execution." *Newton*, 135 F.3d at 270, n. 2. Thus, even if this action could be bifurcated into liability and damages phases, establishing liability would require a fact-specific inquiry into the details of every individual transaction. *See In re Electric Weld Steel Tubing Antitrust Litigation*, 1980 U.S.Dist. LEXIS 9604, *8.

Plaintiffs contend that their expert can present a mathematical formula to measure class-wide damages and from which a plan of allocation can be constructed. This is an acceptable technique when dealing with a misrepresentation or omission affecting the securities market uniformly and where liability has been established. It is not acceptable as a means to arrive at some figure which can then be allocated among the proposed class members, regardless of whether each member suffered actual loss. The securities laws do not provide relief to persons who have suffered no grievance.

Turning to Rule 23(a)(3), to meet the typicality requirement, which is closely related to the issue of whether common issues predominate, the named representatives must be able to establish the bulk of the elements of each class member's claims when they prove their own claims. *Brooks v. Southern Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 58 (S.D.Fla.1990), *citing General Tel. Co. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). If proof of the representatives' claims would not necessarily prove all the proposed class members claims, the representatives claims are not typical of the proposed members' claims. *Id., citing Am/Comm Systems, Inc. v. American Tel. & Tel. Co.*, 101 F.R.D. 317, 321 (E.D.Pa.1984). Plaintiffs' claims cannot be said to be typical of those members of the huge class proposed in the present case who engaged in an ex-

traordinarily large number of transactions during an extended period of time under a wide variety of circumstances. Some class members may have relied on the representation of best execution; some may not have relied on that representation. Some members of the class suffered damages under plaintiffs' theory of the case; many did not.

For similar reasons, adequacy of representation must be questioned. There can be no doubt about the expertise, skill, and diligence of the plaintiffs' counsel, but were an attempt made to compute damages through statistical means, the resulting sum would have to be allotted among those who suffered damage under plaintiffs' theory of liability and those who suffered no damage and were simply seeking a windfall. This produces inevitable conflict.

Turning to Rule 23(b)(3), under the circumstances described above where defendants' liability to a particular class member would have to be determined on an individual basis, the common questions of misrepresentation and scienter do not predominate over the questions affecting the individual members of the proposed class. Under these circumstances a class action is not the superior method of fair and efficient adjudication of the controversy. Exploration of each and every customer's NASDAQ transactions with defendants during the period from November 4, 1992 to August 28, 1996 would be a mind-boggling undertaking.

Plaintiffs contend that in view of the minimal losses of each individual plaintiff, unless a class action is permitted there is no way to hold defendants accountable for their alleged misconduct. That may be true, but it is not a basis for excusing plaintiffs from proving the essential elements of their cause of action. Further, it is not inconceivable that a test case brought by substantial customers could establish liability. This might well have collateral estoppel effect as to common issues, paving the way for other claimants who suffered significant losses. Regardless of the feasibility of individual actions, the present case does not meet the requirements of Rule 23(b)(3).

## CONCLUSION

For the reasons set forth above, plaintiffs' motion for class certification pursuant to Fed.R.Civ.P. 23 will be denied. An appropriate order shall be entered.