Cheryl BESSETTE, for herself and on behalf of all others similarly situated, Plaintiff,

v.

AVCO FINANCIAL SERVICES, INC.; Avco Financial Services of Rhode Island, Inc.; Avco Financial Services of Colorado, Inc.; Avco Financial Services Management Co., Defendants.

C.A. No. 97–487 L.

United States District Court, D. Rhode Island.

June 7, 2002.

Christopher M. Lefebvre, Law Offices of Claude Lefebvre, Pawtucket, RI, Daniel A. Edelman, Edelman, Combs & Latturner, Chicago, IL, for Plaintiff.

A. William Loeffler, Mary Grace Diehl, Troutman Sanders LLP, Atlanta, GA, Deming E. Sherman, Patricia A. Sullivan, Marc A. Crisafulli, Edwards & Angell, Providence, RI, for defendants.

## *OPINION AND ORDER*

LAGUEUX, Senior District Judge.

This dispute concerns a debtor in bankruptcy who entered into a reaffirmation agreement with a creditor. That agreement was neither submitted to nor approved by the bankruptcy court as required by the Bankruptcy Code. 11 U.S.C. § 524. Plaintiff Bessette has filed a motion for leave to file a third amended complaint. Defendant Avco Financial Services, Inc. ("Avco") not only objects to plaintiff's motion, but also moves to dismiss plaintiff's complaint and also moves to strike plaintiff's class allegations. This Court concludes that any remedy available to plaintiff stems only from the bankruptcy court's contempt power. This Court denies defendant's motion to dismiss the complaint and to strike class allegations, but, for jurisdictional reasons, limits the class to debtors in bankruptcy in Rhode Island. Finally, the Court denies plaintiff leave to file a third amended complaint to reinstate a previously dismissed Racketeer Influenced and Corrupt Organization Act ("RICO") claim.

## BACKGROUND

The background and procedural history of this case has been thoroughly detailed in both this Court's prior published decision relating to a motion to dismiss, *Bessette v. AVCO Financial Serv., Inc.*, 240 B.R. 147 (D.R.I.1999), and the First Circuit Court of Appeals' subsequent decision, *Bessette v. Avco Financial Serv. Inc.*, 230 F.3d 439 (1st Cir.2000), *cert. denied, Textron Funding Corp. v. Bessette*, 532 U.S. 1048, 121 S.Ct. 2016, 149 L.Ed.2d 1018 (2001). Plaintiff alleges the following facts. Plaintiff filed for bankruptcy under Chapter 7 of the Bankruptcy Code in August, 1995. As required under the Bankruptcy Code, plaintiff disclosed her debts and obligations, including a debt for furniture bought on credit. Defendant Avco was the creditor for this furniture debt. The following month, prior to a discharge of her bankruptcy, plaintiff entered into a reaffirmation agreement with Avco regarding the furniture debt. The agreement set forth the terms under which she would pay off the debt. In this way, she reaffirmed her obligation to pay Avco for the furniture despite her bankrupt status.[1] The reaffirmation agreement, however, was never filed with the bankruptcy court and did not satisfy the requirements of 11 U.S.C. § 524. *Bessette*, 230 F.3d at 443. Bessette's debts were discharged (including the furniture debt) in November 1995. Bessette made no payments to Avco on the reaffirmation agreement until May 1, 1996, six months after the bankruptcy discharge.

---

1. Her bankruptcy would have otherwise relieved her of personal liability on this debt. Avco stood to benefit from her signing a reaffirmation agreement because Avco would receive payment for the furniture. Bessette also benefited because this would prevent her furniture from being repossessed.

Plaintiff filed suit in 1997. In her second amended complaint, plaintiff alleged that defendant failed to follow the requirements for reaffirmation agreements and violated both the discharge injunction of the Bankruptcy Code and the automatic stay that issues when bankruptcy petitions are filed. Plaintiff also claimed violations of RICO and state law as a result of the same activity. Defendant filed a motion to dismiss arguing that plaintiff did not have a remedy through which she could gain relief for any violation of the Bankruptcy Code. Defendant also sought dismissal of the RICO and state law claims. This Court dismissed the second amended complaint. *Bessette*, 240 B.R. at 163. The First Circuit affirmed this Court's dismissal of the RICO and state law claims and the claims based on violation of the automatic stay, but held that this Court had jurisdiction to hear claims based on § 524. *Bessette*, 230 F.3d at 450.

REMEDY FOR § 524 VIOLATIONS

Both parties conceded at oral argument that the remedy for a § 524 violation is an action for contempt under 11 U.S.C. § 105(a), the statute that sets forth the bankruptcy court's contempt power.[2] Although the parties disagree on what remedies the Court can fashion using its contempt power, the Court need not address that issue to resolve these motions.

In *Bessette v. AVCO*, this Court analyzed whether Congress intended to create a right of action under the Bankruptcy Code. 240 B.R. at 153–57. After analyzing the statute using the factors laid out by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26

(1975), this Court determined that § 524 did not create a private right of action. *Id.* at 155. This Court further determined that § 105(a), the bankruptcy court's contempt power, did not support an action of this type. This Court reasoned that plaintiff could not "bootstrap" a private right of action through the bankruptcy court's contempt power. *Id.* at 156. Furthermore, this Court concluded that because plaintiff had not brought a contempt action in bankruptcy court, this Court was unable to fashion a remedy. *Id.* at 157. Since the First Circuit's ruling, however, that analysis is old news.

This writer mentions this Court's original ruling on an implied right of action only for the purpose of clarifying the subsequent decision of the First Circuit. The First Circuit declined to answer the question of whether § 524 supported an implied right of action. Instead, the First Circuit concluded that "a bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction imposed by § 524 and order damages for the appellant in this case if the merits so require." *Bessette*, 230 F.3d at 445. The First Circuit further concluded that a district court sitting in bankruptcy could invoke the bankruptcy court's contempt powers under § 105(a). *See id.* at 446. Although the First Circuit did not conclusively define the scope of a court's powers under § 105(a), it ruled that this Court could hear this case and fashion a remedy based on the equitable powers contained in § 105(a) or could refer the matter back to the bankruptcy court for further proceedings. *See id.* In accordance with the First Circuit's ruling, this Court will fash-

---

2. "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

ion a remedy, if any is appropriate, in light of the contempt powers of the bankruptcy court, as the First Circuit so directed.

An analysis of the rulings of the other circuits is not necessary to resolve the message emanating from the First Circuit. *See, e.g., Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 507 (9th Cir.2002) ("[C]ontempt is the appropriate remedy and no further remedy is necessary."); *Cox v. Zale Delaware, Inc.,* 239 F.3d 910, 917 (7th Cir.2001) ("[A] suit for violation of section 524(c) can be brought only as a contempt action under section 524(a)(2)."); *Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417, 425 (6th Cir.2000) (holding that violations of § 524 cannot be remedied pursuant to § 105). This case was remanded to this Court for further proceedings under the § 105(a) contempt powers.

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

■ As a corollary argument, defendant also counters that plaintiff has no injury because any payments made under the reaffirmation agreement were voluntary and, therefore, the claim is trivial and shows no violation of the law.

In reviewing a motion to dismiss for failure to state claim upon which relief can be granted, the Court must construe the complaint in the light most favorable to plaintiff, taking all well-pleaded allegations as true and giving plaintiff the benefit of all reasonable inferences. *See* Fed. R.Civ.P. 12(b)(6); *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir. 1990). Dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Judge v. City of Lowell,* 160 F.3d 67, 72 (1st Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

This Court holds that because this is an action to adjudge defendant in contempt, the Court need only consider if plaintiff has alleged the elements of contempt: a violation of an order of the court of which a party had knowledge. Here, there is an order, albeit a statutory order under § 524(c), and not an order issued by a judge. *See Bessette,* 230 F.3d at 445. Plaintiff has alleged that defendant violated that order. Plaintiff has alleged that the defendant was aware that plaintiff had filed a bankruptcy petition, received a subsequent discharge, and the requirements of § 524(c). Therefore, plaintiff has alleged the elements of contempt and dismissal is not warranted. Defendant, however, may later raise defenses to plaintiff's allegations in the complaint.

■ Section 105(a) creates a contempt remedy that is consistent with the greater protection Congress afforded debtors who enter into reaffirmation agreements. As the First Circuit noted a reaffirmation agreement is the only method which can be utilized to allow personal liability to survive bankruptcy. *Jamo v. Katahdin Federal Credit Union,* 283 F.3d 392, 398 (1st Cir.2002).

Defendant relies on the recent Seventh Circuit decision in *Cox v. Zale Delaware Inc.,* supra, to argue that plaintiff must allege that her payments were involuntary. In *Cox,* the Seventh Circuit affirmed the dismissal of a similar claim regarding reaffirmation agreements. 239 F.3d at 917. Contrary to defendant's argument, *Cox* explicitly states that "once he has paid the debt in full and is not in jeopardy of being sued, affirmative relief can be sought only in the bankruptcy court that issued the discharge." *Id.* at 917. *Cox* did not dismiss the claim because the payments were voluntary, although the Court did discuss a recent Sixth Circuit decision, *Pertuso,* which raises the issue of voluntary pay-

ments. *Id.* at 915–16. In *Pertuso*, the Sixth Circuit held that § 105 does not provide a remedy for a § 524 violation and only discussed voluntariness of payment as dictum. 233 F.3d at 423, 425. The Sixth Circuit explicitly rejected the *Bessette* decision and is in direct conflict with the First Circuit on remedies for § 524 violations. *Id.* at 423 n. 1.

For the above reasons, these cases do not require plaintiff to allege that the payments were involuntary. Plaintiff's allegations are sufficient to survive defendant's motion to dismiss, and thus that motion is denied.

## SUBJECT MATTER JURISDICTION

■ Pursuant to 28 U.S.C. § 1334, the Court has jurisdiction over all civil proceedings arising under, arising in or related to cases under Title 11. 28 U.S.C. § 1334(b); *Bessette*, 240 B.R. at 152–53. Federal district courts have original, but not exclusive, jurisdiction over bankruptcy cases. 28 U.S.C. § 1334(b). Jurisdiction is shared with the bankruptcy court, an arm of the district court, although the bankruptcy court can only hear cases that derive from the federal district court's bankruptcy jurisdiction. *Id.;* 28 U.S.C. § 157. Although cases are often referred to the bankruptcy court for resolution, the district court may withdraw its reference to the bankruptcy court and hear the case itself. 28 U.S.C. § 157(d).

Because the complaint raises issues of bankruptcy law for a debtor in bankruptcy in Rhode Island, this Court has jurisdiction over the named plaintiff's claim. For two reasons, however, the Court has limited jurisdiction over any potential class action.

■ Usually debate about bankruptcy jurisdiction centers on whether ancillary actions impact the bankruptcy estate in such a manner that the bankruptcy court would need to resolve these ancillary actions to resolve the bankruptcy. If they do, jurisdiction is appropriate. *See* 28 U.S.C. § 1334(e) [3]; *Williams v. Sears, Roebuck & Co.,* 244 B.R. 858, 862 (S.D.Ga. 2000) (noting that for jurisdictional purposes bankruptcy class actions differ from other class actions because each has its own bankruptcy estate); *McGlynn v. Credit Store, Inc.,* 234 B.R. 576, 584 (D.R.I.1999) (holding that a claim regarding post-discharge conduct that does not impact the bankruptcy estate in any way does not fall under Title 11's jurisdictional umbrella). If the additional claims do not stem from the bankruptcy estate or affect the size of the estate, then the bankruptcy court lacks jurisdiction. *See, e.g., Feld v. Zale Corp.,* 62 F.3d 746, 756–59 (5th Cir. 1995) (holding that bankruptcy court could not enjoin third party tort claims that would not affect estate); *Community Bank of Homestead v. Boone,* 52 F.3d 958, 961 (11th Cir.1995) (noting that "judicial economy itself does not justify jurisdiction" and denying jurisdiction where the outcome of a dispute would have "no conceivable effect on the estate").

■ Here of course, plaintiff is not trying to attach ancillary claims to her claim regarding the bankruptcy estate, but rather seeks to join putative claims concerning other bankruptcy estates to her bankruptcy claim. The estate, however, is the key factor in determining bankruptcy jurisdiction. *See* 28 U.S.C. § 1334(e). The "location" of the estate is determined by the filing of the petition. *Id.; see also Williams,* 244 B.R. at 865–66 (noting that

---

3. "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e).

bankruptcy jurisdiction is predicated on where the estate is located). For a court to have jurisdiction over a bankruptcy estate, the petition for bankruptcy must be filed in that district. If the petition for bankruptcy is not filed in Rhode Island, the estate is not located here, and the Court has no jurisdiction. *See* 28 U.S.C. § 1334(e); *see also Williams*, 244 B.R. at 865–66.

■■■■ The jurisdiction of this Court is also limited by its ability to fashion a remedy. The Court can only provide a remedy consistent with the contempt power of the Bankruptcy Court. *Williams*, 244 B.R. at 867 ("Violations of § 524 can be remedied only by contempt proceedings pursuant to 11 U.S.C. § 105.") (citing *Hardy v. United States*, 97 F.3d 1384, 1388–90 (11th Cir.1996)). The First Circuit concluded that when the order was a statutory order, the District Court could hear the contempt matter as well as the bankruptcy court. *Bessette*, 230 F.3d at 445–46. When an individual is in contempt, he or she has been found in violation of a court order. The Court that issues the order that was violated is the Court that determines whether a person is in contempt. *See Cox*, 239 F.3d at 917 ("But once he has paid the debt in full and is not in jeopardy of being sued, affirmative relief can be sought only in the bankruptcy court that issued the discharge."); *Williams*, 244 B.R. at 867 ("The Court, therefore, lacks jurisdiction to enforce violations of § 524's discharge injunction under § 105 through civil contempt proceedings unless the debtor received his discharge from the Southern District of Georgia."); *see also United States v. Barnett*, 330 F.2d 369, 385 (5th Cir.1963) ("It is elementary that the court against which a contempt is committed has exclusive jurisdiction to punish for such contempt."); *Gray v. Petoseed Co., Inc.*, 985 F.Supp. 625, 628 (D.S.C.1996) ("A con-

trary ruling would lead to the 'anomalous proceeding of one court taking cognizance of an alleged contempt committed before and against another court, which possesse[s] ample powers, itself to take care of its own dignity and punish the offender.' ") (quoting *Ex parte Bradley*, 7 Wall. 364, 74 U.S. 364, 372, 19 L.Ed. 214 (1868)). While this Court can issue contempt findings for persons or entities subject to an order of this Court, it cannot issue orders for parties not within its authority. *See Cox*, 239 F.3d at 917 ("A court retains jurisdiction to enforce its injunctions.").

■■■■ Jurisdictional rules help to prevent "the excessive use of judicial power." *United Elec., Radio and Mach. Workers of Amer. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1098 (1st Cir.1992) (quoting *United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 77, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988)). If a court could find persons in contempt who were not subject to its authority, it could sanction people who were not within its jurisdiction. This would be "inconsistent with the notion that the judiciary may exercise only those powers entrusted to it by law." *In re Providence Journal Co.*, 820 F.2d 1342, 1347 (1st Cir.1986). If one has not been subject to an order, one cannot violate an order, and cannot be sanctioned or punished for contempt. This very basic legal premise determines subject matter jurisdiction in this case. For the foregoing reasons, the Court only has jurisdiction over claims that are related to bankruptcy estates in the District of Rhode Island.

## MOTION TO STRIKE CLASS ALLEGATIONS

Defendant moves to strike the class allegations in the complaint arguing that, as a matter of law, plaintiff will be unable to meet the requirements of class certifica-

tion. Defendant's argument pertains only to the bankruptcy claims asserted in the complaint.

Defendant argues that Rule 23 of the Federal Rules of Civil Procedures does not require that the Court allow discovery on the issue of class certification. Defendant contends that the legal issues are not common to any potential class and the factual scenarios are too individualized to allow the creation of a class, and, therefore, the class allegations should be stricken from the complaint. Plaintiff, of course, takes the opposing position.

### A. Standard of Review

Rule 23 outlines the role of the district court in class certification matters. Subsection 23(a) details the prerequisites for a class action and subsection 23(b) sets forth additional requirements to maintain a class action. Subsection 23(c)(1) directs the Court to determine whether the action is maintainable.[4] Although Rule 23 outlines the substantive requirements needed to establish a class, the rule does not provide a standard of review to determine the sufficiency of any allegations at particular phases of litigation.

▉ For purposes of a motion to strike class allegations, asserted prior to any discovery on the matter, this Court will employ the standard set forth in FRCP 12(b)(6), reviewing this motion as if it were a motion to dismiss. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1759 (2d ed.1986); *see also Walls v.*

*Wells Fargo Bank, N.A.*, 262 B.R. 519, 529 (Bankr.E.D.Cal.2001) (noting that defendant's anticipatory motion to deny class certification was "the functional equivalent of a motion to dismiss"). The Court employs this standard for two reasons. First, as this is the very onset of litigation—a remand of the Court's ruling on a motion to dismiss—it would be inappropriate to hold one part of the complaint—the class allegations—to a higher standard than another part—the substantive law allegations. Second, although plaintiff filed a motion to certify the class, the Court issued a stay order on that motion. There has been neither discovery nor hearings on the issue. For purposes of this motion, plaintiff has only alleged the existence of a class. It is not appropriate to require plaintiff to establish that she can maintain a class action under Rule 23 before plaintiff even attempts to do so. It would, however, be appropriate to dismiss for failure to properly allege facts sufficient to make out a class or that plaintiff could establish no facts to make out a class. Therefore, the Court will incorporate the standard of review for a 12(b)(6) motion to dismiss. *See Walls*, 262 B.R. at 524 ("[M]otion to deny class certification, having been brought prior to any discovery, should be construed according to the same legal standards as a motion to dismiss under Rule 12."). The Court has already explained the legal standard for a motion to dismiss.

▉ Rule 23(a) sets forth the prerequisites for filing a class action.[5] These

---

4. "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits." Fed.R.Civ.P. 23(c)(1).

5. "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the represen-

prerequisites must be alleged in the complaint at the time of its filing and must be established before the Court can certify a class. The proponent of the class certification bears the burden of proving Rule 23 requirements before the class can be certified. *See Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The present question before the Court, however, is not whether the class should be certified, but whether the class allegations in the complaint should be stricken. At this stage, the burden is not on the party seeking class certification, rather, as the non-moving party, all reasonable inferences must be construed in her favor. *See Correa–Martinez,* 903 F.2d at 52.

### B. *Analysis of Motion to Strike Class Allegations*

 Here, plaintiff alleged sufficient facts in the complaint to survive a motion to strike class allegations. Defendant does not contest that plaintiff has alleged the prerequisites of Rule 23(a). Instead, defendant argues that the differences in bankruptcy law among districts preclude nationwide class certification because no class could meet the requirements of commonality and typicality and predominance of common legal issues. Defendant relies on *Walls v. Wells Fargo Bank,* supra, for support. In *Walls,* the bankruptcy court concluded that the class that the plaintiff proposed could not be certified as alleged in the complaint. In summary, the Court reasoned that because of differences in the Circuits regarding "ride through" provisions,[6] the class that plaintiff alleged, as a

matter of law, could not satisfy the commonality and typicality requirements of Rule 23. *Walls,* 262 B.R. at 528. The Court, however, did not conclude that plaintiff could never allege a class that could be certified. *Id.* at 529. Therefore, plaintiff was permitted to file an amended complaint, amending the description of the proposed class. *Id.*

As explained supra, because of this Court's limited subject matter jurisdiction, plaintiff's class must be limited to debtors in bankruptcy who have filed or received their discharge in the District of Rhode Island. Therefore, the Court need not rule on defendant's arguments regarding the differences in law among the Circuits.

Defendant also argues that the factual circumstances of individual debtors preclude class certification as a matter of law. Defendant's argument that plaintiff's claim is too individualized to warrant class certification is premature. Although defendant may ultimately be proven correct, at the initial stages of litigation, prior to discovery, defendant cannot prevail because it has a hunch or even a reasonable basis to believe that plaintiff will fail to meet Rule 23's requirements for class action.

This Court declines to follow the path taken in *Ayers v. Board of Education,* 61 F.R.D. 414 (N.D.Miss.1973). There, the Court granted a motion to strike class allegations because the Court found that there were "probably ten other black teachers" whose situations "may well be governed by a factual situation not common to that of others." *Id.* at 416. This

---

tative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

**6.** A ride through provision allows a debtor who is in possession of secured property and current on his loan payments to retain property by continuing to make payments. In

Circuits that do not recognize ride through provisions, the debtor must either redeem the property or reaffirm the debt. The First Circuit does not recognize "ride through" options. *See Bank of Boston v. Burr,* 160 F.3d 843, 849 (1st Cir.1998).

Court will not engage in fact-finding prior to discovery. In this instance, when reviewing a motion to strike class allegations, the Court will confine its review to factual allegations contained within the complaint. At this point, there is no basis to conclude that the class consists of only a handful of possible plaintiffs whose factual scenarios could never be suitable for class action. Simply because Rhode Island is a small state does not, as a matter of law, warrant dismissal.

Defendant relies on *In re Merrill Lynch* for support that the claims here are too individualized for class certification. 191 F.R.D. 391 (D.N.J.1999), *aff'd sub.nom.*, *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir.2001). The case is inapposite for two reasons. First, plaintiff's motion to certify a class was before that Court. *Id.* at 393. As already stated, in this case the Court is faced with defendant's motion to strike class allegations. Here, the bar is not as high. Second, *In re Merrill Lynch* concerned a class action relating to an allegation of securities fraud. In its decision, the Court outlined the heightened requirement of proof of harm for individual claims. *Id.* at 395. The instant case is not a securities fraud case and Rule 10b–5's requirements are not applicable. *See id.*

For the foregoing reasons, the Court denies defendant's motion to strike class allegations. This Court will allow discovery to proceed on the class certification issues and then consider any motion to certify a class and any objections thereto. *See Yaffe v. Powers*, 454 F.2d 1362, 1367 (1st Cir.1972) (encouraging some discovery prior to passing on the merits of the class allegations).

## MOTION TO AMEND COMPLAINT TO REINSTATE THE RICO COUNT

After the First Circuit remanded this case, plaintiff sought to amend the complaint. The proposed third amended complaint, among other things, seeks to reinstate one RICO count previously dismissed. Plaintiff's motion is based on the Supreme Court's subsequent ruling in *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001). Defendant argues that plaintiff should not be allowed to amend the complaint because of the law of the case doctrine. Defendant additionally argues that *Kushner* does not apply to plaintiff's RICO claim and that, even if amended, plaintiff has failed to state a claim upon which relief can be granted.

In this Court's previous decision on this issue, the Court granted defendant's first motion to dismiss plaintiff's RICO claims. *Bessette*, 240 B.R. at 162. Now, plaintiff seeks to revive a RICO claim, Count VI of the second amended complaint, which would be Count II of the proposed third amended complaint. *Bessette*, 230 F.3d at 449–50. That Count alleged that certain unspecified Avco employees, John Does 1–10, were "persons" and Avco and its parent Textron were "enterprises" for purposes of RICO and had engaged in a pattern of mail fraud. *Id.* The First Circuit held "that plaintiff failed to allege that the John Does were associated in any manner apart from the activities of the enterprise, and therefore, under the heightened standard required for RICO claims, she fails to state a claim for which relief can be granted under RICO." *Id.* at 449.

 The law of the case doctrine postulates that once a court determines a rule of law, that rule of law will govern all subsequent decisions of the court. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). In other words, the Court cannot change its mind on issues of law at different phases of the case. If the Court did so, judicial aims of efficiency and

finality would be jeopardized. *Id.* at 816, 108 S.Ct. 2166. Of course, extraordinary situations may demand that a court alter a previous ruling on the law, but "as a rule courts should be loathe to do so in the absence of extraordinary circumstances." *Id.* at 817, 108 S.Ct. 2166 (citing *Arizona v. California,* 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)).

For the law of the case doctrine to apply, an appellate court must have considered and decided the issue of law, either explicitly or implicitly by the disposition of the appeal. *Cohen v. Brown Univ.,* 101 F.3d 155, 168 (1st Cir.1996). The law of the case doctrine has some rare exceptions. The First Circuit rule is that a case should not be reopened "unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." *United States v. Rivera–Martinez,* 931 F.2d 148, 151 (1st Cir.1991) (quoting *White v. Murtha,* 377 F.2d 428, 432 (5th Cir.1967)). In the First Circuit, an intervening controlling decision is either a statutory overruling, a Supreme Court opinion or an en banc opinion of the First Circuit. *Cohen,* 101 F.3d at 168. These exceptions apply when such an authority would conclusively change the outcome of the case; it is not enough that the authority might make a party's argument more persuasive. *Fogel v. Chestnutt,* 668 F.2d 100, 109 (2nd Cir.1981).

This Court dismissed essentially the same RICO claim, Count VI of the original complaint, and the First Circuit affirmed that dismissal.[7] The issue was considered and decided by an appellate court. *See Cohen,* 101 F.3d at 168. Plaintiff did not appeal the First Circuit's ruling. *See Textron Funding Corp. v. Bessette,* 532 U.S. 1048, 121 S.Ct. 2016, 149 L.Ed.2d 1018 (2001) (denying defendant's petition for a writ of certiorari). Plaintiff argues that the subsequent Supreme Court decision, *Kushner,* constitutes an intervening controlling authority that warrants the Court's reexamination of the prior ruling on the RICO count.

Any RICO claim requires four allegations: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir.1996) (quoting *Sedima, S.P.R.L. v. Imrex, Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). It is well established that § 1962(c) requires that the "person" be distinct from the "enterprise". *Kushner,* 533 U.S. at 161–62, 121 S.Ct. 2087. The enterprise, the criminal tool, is not liable and cannot be a defendant in a RICO action. *Odishelidze v. Aetna Life & Cas. Co.,* 853 F.2d 21, 23 (1st Cir.1988). In *Kushner,* the Court held that an employee, working within the scope of his or her employment, could be a "person" distinct from the corporation, alleged to be the "enterprise", and thus be liable. 533 U.S. at 161–63, 121 S.Ct. 2087. *Kushner* reversed the Second Circuit's rule that employees acting within the scope of their employment were not distinct from a corporate enterprise. *Id.* at 166, 121 S.Ct. 2087. This assumption, now overruled, was the primary basis for the First Circuit's affirmance of the dismissal of Count VI of the second amended complaint. *Bes-*

---

7. There is one difference between Count VI of the Second Amended Complaint and Count II of the proposed Third Amended Complaint. Count II alleges that the mails were used to receive money from "debtors including plain-tiff, Mr. Gonzalez and Ms. Rosi." Count VI alleged that the mails were used to receive money from "debtors, including plaintiffs and Ms. Rosi."

*sette*, 230 F.3d at 449. To reach that conclusion, the First Circuit relied on *Riverwoods Chappaqua Corp. v. Marine Midland Bank N.A.*, 30 F.3d 339 (2nd Cir. 1994), the same case on which the Second Circuit based its dismissal. *Compare Kushner*, 533 U.S. at 164, 121 S.Ct. 2087 (noting that the Second Circuit relied on that precedent to dismiss), *with Bessette*, 230 F.3d at 449 (relying on that precedent). Therefore, the First Circuit, in light of *Kushner*, would be hard pressed to rely on the same law to sustain the dismissal of the RICO Count. *See* 533 U.S. at 164–66, 121 S.Ct. 2087.

Defendant attempts to distinguish *Kushner* on its facts, arguing that it applies only when the person is the sole shareholder of the enterprise. Defendant's argument is unconvincing. The Supreme Court held that a corporation was a legally distinct person for purposes of RICO. *See id.* at 163, 121 S.Ct. 2087. A contrary conclusion was the basis for the First Circuit's decision in *Bessette*. *See* 230 F.3d at 449. Therefore, this Court considers *Kushner* an intervening controlling authority. *See Cohen*, 101 F.3d at 168.

■ Surmounting the law of the case doctrine, however, only gets plaintiff so far. The Court must still consider whether to allow plaintiff's motion to amend the complaint. If plaintiff's motion to amend is futile, denial is warranted. *Kay v. New Hampshire Democratic Party*, 821 F.2d 31, 34 (1st Cir.1987) (per curiam) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). This rule encourages judicial efficiency and the conservation of resources for all parties. If the motion to amend is futile, the Court avoids a situation where an amended complaint is allowed, but then immediately dismissed upon an appropriate motion.

The proposed complaint fails to name a known defendant who can be served and be given notice of the complaint. *See Vitone v. Metropolitan Life Ins. Co.*, 943 F.Supp. 192, 201 (D.R.I.1996) ("Until the John Does are served they are not parties to this case and any alleged claims against them will not be considered by the Court."). Plaintiff only names John Does 1–10 as defendants to this proposed Count. There is no party to contest the allegations of plaintiff because Avco is not a defendant to the RICO Count. For purposes of this motion, this Court is treating Avco as the opposing party, but as the alleged "enterprise", Avco is not liable under RICO. *See Odishelidze*, 853 F.2d at 23. Avco, furthermore, has no obligation to defend other persons. This Court cannot sanction the further progression of an adversarial proceeding where there is no opposing party. It is futile to maintain litigation when there is no opposing party that can respond to the allegations. *See Kay*, 821 F.2d at 34.

Finally, this Court notes that when mail fraud is alleged as a predicate act under RICO, the complaint must satisfy the particularity requirements of FRCP 9(b). *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir.1997). Because Count II of the proposed third amended complaint does not name any known defendants, it cannot satisfy the particularity requirements of an allegation of mail fraud. As the First Circuit stated, "minimal assertions do not permit us to realistically assess the purposes, participants, or methods of the alleged acts." *Id.* (dismissing a RICO claim based on mail fraud for lack of particularity in the pleading).

CONCLUSION

What remains of this lawsuit is very basic: It is an action for contempt on behalf of plaintiff and, potentially, a class of similarly situated debtors whose bankruptcy was filed or discharged in Rhode Island. The ramifications for the parties

will be determined pursuant to the law governing contempt proceedings.

For the foregoing reasons, defendant's motion to strike class allegations is denied. To be certified, any class must consist of debtors in bankruptcy from the District of Rhode Island. The Court also denies defendant's motion to dismiss the complaint. Additionally, the Court denies plaintiff's motion to amend the complaint to reinstate the count alleging violations of RICO.

It is so ordered,